**E-FILED**
Tuesday, 26 August, 2008  11:48:40 AM
Clerk, U.S. District Court, ILCD

AO 241 (Rev. 5/85)

## PETITION UNDER 28 USC § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

*(If petitioner is attacking a judgment which imposed a sentence to be served in the future, petitioner must fill in the name of the state where the judgment was entered. If petitioner has a sentence to be served in the future under a federal judgment which he wishes to attack, he should file a motion under 28 U.S.C. § 2255, in the federal court which entered the judgment.)*

### PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

*Instructions–Read Carefully*

(1) This petition must be legibly handwritten or typewritten, and signed by the petitioner under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form.

(2) Additional pages are not permitted except with respect to the facts which you rely upon to support your grounds for relief. No citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

(3) Upon receipt of a fee of $5 your petition will be filed if it is in proper order.

(4) If you do not have the necessary funds for transcripts, counsel, appeal, and other costs connected with a motion of this type, you may request permission to proceed *in forma pauperis*, in which event you must execute form AO 240 or any other form required by the court, setting forth information establishing your inability to pay the costs. If you wish to proceed *in forma pauperis*, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution. If your personal account exceeds $_____, you must pay the filing fee as required by the rules of the district court.

(5) Only judgments entered by one court may be challenged in a single motion. If you seek to challenge judgments entered by different courts either in the same state or in different states, you must file separate petitions as to each court.

(6) Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the petition you file seeking relief from any judgment of conviction.

(7) When the petition is fully completed, the original and at least two copies must be mailed to the Clerk of the United States District Court whose address is

(8) Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.

FILED
@ 10:20 a.m.
AUG 2 6 2008

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | District *Central District of Ill* |
|---|---|
| Name KELVIN LITTLE | Prisoner No. N62392 | Case No. 08-1211 02-CF-74 |
| Place of Confinement Hill. C.C. Galesburg, Ill | | |
| Name of Petitioner (include name under which convicted) KELVIN LITTLE | Name of Respondent (authorized person having custody of petitioner) WARDEN GERARDO, ACEVEDO |
| | v. |
| The Attorney General of the State of: Lisa Madigan | |

## PETITION

1. Name and location of court which entered the judgment of conviction under attack Ill, APP 2d Court Fifth Dis, which Affirmed Judgment Randolph Co, Court Ill

2. Date of judgment of conviction September 26 2002

3. Length of sentence 4 years 5 years 3 years = 12 years

4. Nature of offense involved (all counts) Unlaw Possession of Controlled Sub with Intent To Deliver, unlaw deliver of Controlled Sub, unlawful Possession of Weapons By A felon

5. What was your plea? (Check one)
   (a) Not guilty ☑
   (b) Guilty ☐
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:
   NO

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☑
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐ No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☑ No ☐

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

(a) Name of court _Randolph County Circuit Court Chester, Ill._

(b) Result _Affirmed_

(c) Date of result and citation, if known _____

(d) Grounds raised _Def, Was Not Proven Guilty Beyond A Reasonable Doubt, The Court Erred By Questioning Potential Jurors._

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court _Randolph County Court Chester Il,_

(2) Result _Affirmed Remanded for Cal for Days Spent_

(3) Date of result and citation, if known _December 1 2004_

(4) Grounds raised _Plain Error, Ineffective Assistance for Failure To Seek A Severance of The Charges_

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court _____

(2) Result _____

(3) Date of result and citation, if known _____

(4) Grounds raised _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☑ No ☐

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court _Randolph County Circuit Court Chester Il._

(2) Nature of proceeding _Post conviction (P.C.)_

(3) Grounds raised _Ineffective Assistance of Trial Counsel & Improper Selecting of Jurors And Questionlinks_

(3)

AO 241 (Rev. 5/85)

for Another Civil Trial At The Same Time Counsel Was Representing Client over The objection of Counsel

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☑

(5) Result   PC.) Affirmed (Res Judicata)

(6) Date of result   January 13, 2006

(b) As to any second petition, application or motion give the same information:

(1) Name of court   Randolph County Circuit Chester III

(2) Nature of proceeding   Motion To Vacate The Dismissal of Postconviction

(3) Grounds raised   Because it Raised Ineffective Ass of Counsel entirely Different from The Claim And That Res Judicata Applies only Where the Same Claim Was Decided on Direct Appeal

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☑

(5) Result   Dismissal first Stage Denied

(6) Date of result   April 4, 2006

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.    Yes ☑   No ☐
(2) Second petition, etc.   Yes ☑   No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: Effective Assistance of Counsel,

Supporting FACTS (state *briefly* without citing cases or law) Failed To Challenge The Veracity of Affidavit Supporting Probable Cause, Veracity of Overhearing Recordings, Not Pursuing Motion To Suppress And To Dismiss Failed To filed A Motion for Judgment of Acquittal After The States Case And Again After All Evidence Was Presented Due To Insufficient Evidence To Support A Conviction

B. Ground two: Unconstitutional Search and Seizure Evidence Obtained from

Supporting FACTS (state *briefly* without citing cases or law): Search of Vehicle, Was Illegal Vehicle Was not Reg To Search of Apartment Illegal Due To Affidavit Supporting Probable Cause NOT Valid NO WARRANT DOC Sheet Read CF 02-73 Unlawful Arrest, Docket Sheet for Search Warrant Issued is NOT Little's Number

AO 241 (Rev. 5/85)

C. Ground three: _Unconstitutional Selected Jury Conflict of Interest Judge_

Supporting FACTS (state *briefly* without citing cases or law): Presiding of Civil And Criminal Case Counsel Stated That There would Be A Conflict Because The Jury Could Be Confused To The Burden of Proof And Motion, Only Actual Conflict Existed and That It Affected Counsel Performance Has To Be Presented

D. Ground four _Multiple, Coerced Confessions Trial, Interview with Randolph County Sheriff_

Supporting FACTS (state *briefly* without citing cases or law): On Cross Examin Carney C/S Inform That He Never indicated He Ever Purchased Cocaine from little, But Dec 10 2001 Said He Purchased $200 for A Bag of Cocaine little and Davis, Davis Test on The Stand Was That little Sold The Drugs To C/S, On July 9 2002 Stated That She Don't Know If It Was Her or little Who Sold The Drugs, On April 3 2002 Interview Never Stated Anything

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: Conflict of Interest I Plan To Bring It Up Amended But Never Got The Chance From Affirmed Dir Appeal To Res Judicata on P.C. And Not of Record

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐   No ☑

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing James W. Kelley 0619CF01, 314 West Third Street Sparta Il 62286 (618) 443 3091 fax 93
(b) At arraignment and plea James W. Kelley (618) 443-3093 fax Conflict of Interest

(6)

AO 241  (Rev. 5/85)

(c) At trial   *P.D. Richard Brown*

(d) At sentencing   *Richard Brown*

(e) On appeal   *John H. Gleason  730 E Ill Highway 15 Suite #1 Mt. Vernon, Il 62864 (618) 244 9307*

(f) In any post-conviction proceeding   *Pro Se*

(g) On appeal from any adverse ruling in a post-conviction proceeding   *Allan H Andrews 400 W Monroe St. Suite 303 PO Box 5240 Springfield Il*

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☑   No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☑   No ☐
   (a) If so, give name and location of court which imposed sentence to be served in the future: *Randolph Co Ill, Circuit Court Chester Il*
   (b) Give date and length of the above sentence: *December 17 2002  Two 3 years To Be Served Consecutively To Each Other And Any Other Sent*
   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
   Yes ☑   No ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

*Aug 1 2008*
_____
(date)

*Kelvin Little*
_____
Signature of Petitioner

## STATEMENT OF FACTS

On August 26, 2002, the defense started selecting a jury for his trial.
The defendant attorney Richard Brown, made a motion, after he had been
advised by the trial court of his intention to select a jury for both
the defendant and another civil trial counsel was involved with. Counsel
informed the Court that it had a conflict with the selecting of the two
juries in this manner, counsel was opposed to that act and admonished
the judge that under the Codes of Professional Responsibility  requires
"that counsel gives individual loyalty to each of his clients," counsel
stated that he did not believ that he could give the defendant indivi-
dual loyalty at the same time the he was selecting a jury for a different
case. Counsel stated that there would be a conflict because the jury
could be confused to the burden of proof beyond a resonable doubt used
in criminal case with the burden of proof, by the preponderance of the
evidence.


The court may have abused its discretion with the process used by the
court and may have violated it's own rule as well as my constitutional
right to a fair and impartial jury and violation of my due process of law
(more information on page #.3, August 26, 2002, and September 26 on page
#. 2, 2002.of the record.)

BACKGROUND

The defendant was convicted by a Randolph County jury of unlawful possession of a controlled substance with intent to deliver, unlawful delivery of a controlled substance, and unlawful possession of weapons by a felon. His attorney filed a posttrial motion on his behalf. After the defendant was sentenced to terms of 12, 5, and 4 years in prison for the respective convictions and was ordered to pay a drug assessment fee of $2,000, his attorney filed a motion to reconsider his sentence. On appeal, this court rejected his assertions that it was plain error for the State to bring the drug charges and the weapons charge in a single indictment and that his counsel provided ineffective assistance through his failure to seek a severance of the charges. We found to be accurate his assertion that he was entitled to credit against his fine for 177 days spent in custody prior to the date on which the sentence was imposed. The defendant's convictions and sentences were affirmed, and the cause was remanded to the circuit court for the calculation of the amount that was owed on the drug assessment fee after the application of the credit against his sentence for the time that he spent in custody prior to his sentencing. *People v. Little*, No. 5-02-0739 (December 1, 2004) (unpublished order pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23)).

On December 21, 2005, the defendant filed a *pro se* postconviction petition pursuant to the Act. He contended that his trial counsel had provided inadequate assistance in various ways: he failed to move for a directed verdict at the close of the State's case and again at the close of all the evidence, he failed to challenge the veracity of the affidavit in support of the search warrant, and he failed to pursue the defendant's prior attorney's motion to suppress evidence that had been obtained under the search warrant and to suppress the wire recording of the drug transaction. He asserted that the judge had improperly simultaneously questioned the potential jurors for a civil trial in which defense counsel was representing a litigant at the same time that the jurors for the defendant's criminal trial were selected. The defendant did

2

not assert that his appellate defender had provided inadequate assistance through his failure to raise on appeal the issues that he now presented in his *pro se* postconviction petition. The defendant's petition was supported by various documents, including a letter dated January 14, 2004, directed to the defendant from his appellate counsel. This letter explained in detail why issues that the defendant wanted to have raised on appeal were not viable ones. On January 13, 2006, at the first stage of consideration, the trial court reviewed the record and this court's decision and dismissed the defendant's petition on the ground of *res judicata*. The defendant's motion to vacate the dismissal of his postconviction petition was denied on April 4, 2006.

## CONTENTIONS ON APPEAL

The defendant contends that the petition was sufficient to proceed beyond the first stage of consideration because it raised ineffective-assistance-of-counsel claims that were entirely different from the claim that had been raised on direct appeal. He argues that *res judicata* "applies only where the same claim was decided on direct appeal." He seeks the reversal of the trial court's order and a remand of the cause to the circuit court for further proceedings under the Act.

## STANDARD OF REVIEW

The dismissal of a petition for postconviction relief at the first stage of consideration is subject to *de novo* review, and the proper interpretation of the Act is a question of law that is also reviewed *de novo*. *People v. Harris*, 224 Ill. 2d 115, 123, 862 N.E.2d 960, 966 (2007); *People v. Coleman*, 183 Ill. 2d 366, 389, 701 N.E.2d 1063, 1075 (1998). Because our assessment of the sufficiency of a postconviction petition is *de novo*, we are free to substitute our own judgment for that of the trial court. *People v. Edwards*, 197 Ill. 2d 239, 247, 757 N.E.2d 442, 447 (2001).

# STATEMENT OF FACTS

Kelvin M. Little was charged with unlawful possession of a controlled substance with intent to deliver, unlawful delivery of controlled substance, unlawful possession of cannabis, and unlawful possession of weapons by a felon. (R.C14-15)

At Little's trial, Corey Carney testified that he had convictions for felony theft, forgery, and a violation of the Electronic Funds Act. (R.62-63) On December 10, 2001, at approximately 7:20 P.M., Carney was at Sparta Police headquarters, where Detective Donnie Krull of the Randolph County Sheriff's Department, and Sparta Police officers, fitted him with "a wire." Carney intended to "[b]uy drugs" from Kelvin Little, whom he knew. Krull drove Carney to a Sparta bowling alley. From there, Carney walked the short distance to Little's house at 213 East Page Street. (R.63-67)

Carney knocked. The door was answered by Little's girlfriend, Melissa Davis, whom Carney had known for years. Once inside, Carney asked Davis and Little whether they had "anything". Carney was sure that Davis and Little "knew what [he] was there for" because he had "dealt with them a lot before". Little walked up to Carney and "checked [him] for a wire" by patting down his "front" and legs, but Little did not find the wire. Carney "told them what [he] wanted", and Little told Carney that he would "'hook [him] up'". Then, Little "told Melissa that he needed to see her in the back room, and they went back there for at least ten to fifteen — about ten minutes," as Carney "stood there waiting." (R.67-68)

When Davis and Little returned, Little told Carney he had "something good" for him. Carney handed Little $200, and Little handed him "[a] bag full of powder cocaine." According to Carney, Davis and Little knew that he usually bought crack

cocaine, and Little asked Carney whether he knew "'how to cook'" powder cocaine into crack cocaine. Carney replied that he would find a way. After some small talk, Carney left the house. (R.68-70) Carney walked straight to Krull's car. Krull drove back to the police station, where Carney handed him the bag of cocaine. (R.71-72) Carney admitted that he cooperated with police in exchange for lenient treatment on some pending criminal charges. (R.75-76)

Janice Frederking testified that she is a detective sergeant with the Randolph County Sheriff's Department. (R.77) On the evening of December 10, 2001, she participated in an undercover narcotics investigation by surveilling a house at 213 East Page Street in Sparta. She saw Corey Carney walk straight from the bowling alley to the front door of that house. Sometime later, she saw him leave the house and walk back to the bowling alley. (R.77-80)

Melissa Davis testified that she was thirty-one years old. She was imprisoned at the Dwight Correctional Center, serving five-year sentences for five counts of delivery of a controlled substance, to which she had pleaded guilty. At the time of trial, Davis had been at Dwight for six weeks, and was awaiting a place in the four-month impact incarceration program, or boot camp, which would be followed by "house arrest for 90 days" and "parole for two years." (R.82-83,98-99) Davis met Kelvin Little in 1996, and had been his girlfriend "[o]ff and on for two-and-a-half years." (R.83-84)

On December 10, 2001, Davis and Little were living together at 213 East Page Street in Sparta. (R.83-84) That evening, Davis answered a knock at the door. It was Corey Carney, and he asked Davis whether she had "anything." Davis answered in the affirmative, and allowed Carney inside. Little searched Carney for a wire, but did not

find one. Little searched everyone who went to their house to buy drugs. (R.83-86,96) Davis and Little walked to the back bedroom, which the two shared. There, Little "asked for some dope," and Davis gave it to him. The two then returned to the front of the house. Carney handed money to Little, and Little handed Carney a plastic bag of powder cocaine. (R.86-88) Little and Carney discussed "cooking" the powder into crack. Then, Corey left the house. (R.88-89)

In March of 2002, Little had started driving a "cream color" Lincoln, which he was purchasing from a Kevin Johnson. (R.90-91) Also at that time, Little had possession of "[a] small, black gun" and bullets. He kept the gun in "a black case", but Davis did not know where he kept the case. (R.91-92)

On April 3, 2002, Davis and Little visited one of Davis' "sources" at his home in St. Louis. With Little present, Davis purchased approximately one-quarter of an ounce of crack cocaine. Davis and Little returned to Sparta in a car Davis had rented, arriving home in the middle of the day, "[b]etween 11:30 and 12:15." Davis placed the newly purchased bag of crack cocaine "in [her] drawer" in the bedroom she shared with Little. (R.92-94,95-96) At approximately 1:15 P.M., police arrived and "raided" the house. They searched and handcuffed Davis and Little, then took them to the police station. (R.89-90,94-95) At the time, Davis thought that the newly purchased bag of crack cocaine was the only crack cocaine in the house. She also knew she had some marijuana of her own in the house. (R.96-97)

Davis further testified that she began speaking with police about Kelvin Little and drug sales after Donald Krull of the Randolph County Sheriff's Department visited her at the county jail in April of 2002. Krull told Davis that if she would tell him about her

Hanna and other officers arrived at approximately 1:30 P.M. They "secured" Melissa Davis and Kelvin Little, then began their search. (R.131-32) Hanna found a "bag of crack cocaine" (People's Exhibit 12) behind some videotapes in the lower compartment of "a TV stand" in the "master bedroom", and "another package of crack cocaine" (People's Exhibit 13) underneath a blanket on a TV stand in the living room. He found "a small electronic scale" (People's Exhibit 14) in the kitchen. He notified Detective Donnie Krull of each find. (R.132-39)

Randolph County Chief Deputy Donald R. Krull testifed that on December 10, 2001, at approximately 7:00 P.M., he and other police officers met with a confidential source, Corey Carney, at Sparta Police headquarters. Krull gave Carney ten twenty-dollar bills, and fitted him with a recording device. (R.140-44) Krull drove Carney to the vicinity of 213 East Page Street in Sparta. Carney got out of Krull's vehicle, and walked to that address. Several minutes later, Carney returned to the vehicle, and handed Krull a bag (People's Exhibit 16). (R.145-48) Laboratory testing revealed that this bag contained 0.4 gram of cocaine. (R.148)

On April 3, 2002, Krull participated in a search of the residence at 213 East Page Street in Sparta. In the "back master bedroom" of the house, Krull removed clothing from a dresser drawer. Two baggies containing crack cocaine (People's Exhibit 3) "fell out of a T-shirt." (R.155-58) Subsequent testing showed that these two baggies contained "ten grams of cocaine base." (R.159) "Cocaine base is crack cocaine," Krull testified. (R.160) Officer Danny Hanna told Krull about some cocaine that Hanna had found. These items were admitted into evidence as People's Exhibits 12 and 13. Laboratory testing showed that these exhibits consisted of 0.3 gram of cocaine base,

-8-

AFFIDAVIT SUPPORTING PROBABLE
CAUSE FOR WARRANT DECEMBER 5
2001. DO NOT MENTION ANYTHING
ILLEGAL ON LITTLE, THERE FOR HOW COULD
THERE BE A WARRANT FOR LITTLE,
DOCKET SHEET LEAR READS WARRANT FOR
02-CF-73, NOT 02-CF-74.
The Vehicle WAS NOT MY Vehicle,
The SEARCH ON LITTLE'S Behave WAS ILLEGAL.
The OVERHEAR WAS ILLEGAL, THERE WAS NO
MONEY RETURN from The DELIVERY. OVERHEAR
Recording Err, DATED DECEMBER 2002, KEY
HOLDER WAS PRESENT "DAVIS," ON The POSSESSION.
The ARREST OF LITTLE WAS UNLAWFUL, DO TO NOT lack
ENUFF EVIDENCE That LITTLE CAUSE A CRIM.
Conflict of INTEREST, TRIAL Judge KNEW ABOUT A
Conflict WAS POSSABLE With Civial, And Criminal.
Defendant Only Has To Show Actual Conflict Existed
And Affected Counsel Performance, And INCOMPET-
ENCE of Counsel, Indictment or INformation is
NOT EVIDENCE, OVERHEAR Recordings NOT Authorize
BY IRS, or ted for LITTLE Illegal, BY REASON of
The Aforesaid, The PRESENT INCarceration of
LITTLE Violates The 4th 5th 6th And 14
AMENDMENTS To The Constitution of The United
States.

Complainant states that   facts upon which this complaint is based are as follows:
(Set forth the facts leading to the request for issuance of s   ch warrant)

# AFFIDAVIT

I, Complainant Donald R. Krull, being duly sworn depose and say:

I am a Randolph County  Deputy Sheriff and have been so employed by the Randolph County Sheriff's Office for the past  9 years. I  presently hold the rank of  Chief Deputy at the Randolph County Sheriff's Office. During this time as a law enforcement officer, I have executed numerous search warrants and have received specialized training in the investigation of illegal drug trafficking.

Having been involved in numerous investigations, I have come to learn that people who are involved in illegal drug trafficking keep, packaging and processing materials, United States currency, scales, papers, videotapes, photographs, paraphernalia and miscellaneous drug equipment; drug records, notes, and memos of amounts paid, quantities sold, and amounts owed which are indicia of illegal drug activity.

I have come to learn that people who are involved in illegal drug trafficking possess firearms, firearm ammunition; bills, papers, and documents showing the identity of the occupants buying and distributing drugs, these occupants regularly keep records on paper, on computers, computer disks, and computer CDs of the amounts of drugs, customer names that they are selling to and the amount of money that the customers owe for the drugs. I have observed that these records are kept at the same location where the drug possession occurs.  In addition, I have been told by numerous defendants who have been involved in the distribution of drugs and have observed myself on several occasions, that scales and packaging material, including plastic bags, twist-ties and bread ties are usually kept in the same location with the drugs.  I have also observed that it is regular practice for individuals involved in illegal drugs sales to keep large quantities of United States currency and guns, ammunition either on their person or at the same location.

On December 21, 2000, while acting under the direction of Federal Police Authorities and equipped with eavesdropping devices per Federal Authority obtained by the F.B.I., Confidential Source, (C/S), #1 purchased four (4) rocks of purported crack cocaine for $200 from an individual in Sparta, Randolph County, Illinois.  The individual went to an apartment on E. Page Street, Sparta, Illinois to obtain the crack cocaine for C/S #1.

I completed a field test of the purchased drugs with the results being positive for the presence of cocaine.

On December 22, 2000, I interviewed Confidential Source, (C/S #2).

C/S #2  stated that an individual was "running" and obtaining crack cocaine for different people. The C/S advised that C/S has known  this INDIVIDUAL to being doing this for the last six months.  The C/S stated that INDIVIDUAL obtained crack cocaine for C/S. C/S advised the last time was 12-15-2000 when INDIVIDUAL obtained five (5) $50 rocks of crack for C/S from DAVIS. C/S stated that in addition to the 12-15-2000 purchase, C/S had obtained crack cocaine from INDIVIDUAL at least 15 times. The C/S advised that five of these times the C/S obtained $100 or two (2) $50 rocks of crack cocaine. The C/S advised that C/S obtained $50 rocks of crack cocaine the other ten times.  The C/S advised that INDIVIDUAL usually went to DAVIS to get the crack cocaine.  The C/S stated that  INDIVIDUAL was obtaining crack cocaine for Dave Heinemeyer, Frank (LNU), Tyrone Marshall, Abe Monroe, Jay Freemen and other unknown individuals.

source, Melissa DAVIS. C/S advised th...  when at the INDIVIDUAL telephoned Melissa DAVIS he asked her if he could come over and get something.  C/S advised that C/S gave $100 to INDIVIDUAL for the purchase of crack cocaine. C/S advised that INDIVIDUAL left at the INDIVIDUAL'SS mobile home and later returned with two (2) rocks of crack cocaine that INDIVIDUAL delivered to C/S in the shed.

I completed a field test of the purchased drugs with the results being positive for the presence of cocaine.

On January 25, 2001, at approximately 7:40 P.M.,  while acting under the direction of Federal Police Authorities and equipped with eavesdropping devices per Federal Authority obtained by the F.B.I., Confidential Source, (C/S) #2  purchased two (2) rocks of purported crack cocaine for $100 from Melissa DAVIS at 213 E. Page St., Sparta, Randolph County, Illinois.

I completed a field test of the purchased drugs with the results being positive for the presence of cocaine.

On January 25, 2001, at approximately 8:41 P.M.,  while acting under the direction of Federal Police Authorities and equipped with eavesdropping devices per Federal Authority obtained by the F.B.I., Confidential Source, (C/S) #2  purchased two (2) rocks of purported crack cocaine for $100 from Melissa DAVIS at 213 E. Page St., Sparta, Randolph County, Illinois.  C/S stated that DAVIS had additional crack cocaine for sale.

I completed a field test of the purchased drugs with the results being positive for the presence of cocaine.

On February 05, 2001, at approximately 2:25 P.M.,  while acting under the direction of Federal Police Authorities and equipped with eavesdropping devices per Federal Authority obtained by the F.B.I. S/A I.A. Bratcher, Confidential Source, (C/S) #2  purchased two (2) bags of purported crack cocaine for $100 from Melissa DAVIS at 213 E. Page St., Sparta, Randolph County, Illinois. C/S stated that DAVIS had additional crack cocaine for sale.

I completed a field test of the purchased drugs with the results being positive for the presence of cocaine.

On February 05, 2001, at approximately 10:05 P.M., while acting under the direction of Federal Police Authorities and equipped with eavesdropping devices per Federal Authority obtained by the F.B.I. S/A I.A. Bratcher, Confidential Source, (C/S), #2  purchased one (1) bag of a purported ¼ ounce of crack cocaine for $300 from Melissa DAVIS at 213 E. Page St., Sparta, Randolph County, Illinois.  C/S stated that KEL (LNU) was present inside the Apartment.

I completed a field test of the purchased drugs with the results being positive for the presence of cocaine.

On December 8, 2001, I interviewed Confidential Source (C/S) #4.  C/S #4 stated that he has known Melissa Davis for 15 years.  C/S stated that he has purchased crack cocaine from DAVIS at least 50 times. C/S stated C/S has observed DAVIS possess ¼ ounce of crack cocaine for sale in the past. C/S stated that he has had recent conversation with DAVIS and she agreed to sell him cocaine.

On December 10, 2001, while acting under the direction of  Police Authorities and equipped with eavesdropping devices per State Overhear Authorization 2001-MR-0107, Confidential Source, (C/S), #4 purchased one (1) bag of a purported  cocaine for $200 from Melissa DAVIS at 213 E. Page St., Sparta, Randolph County, Illinois.  C/S stated that KELVIN LITTLE and DAVIS completed the drug sale.

} SS

COUNTY OF RANDOLPH }

## AFFIDAVIT

AFTER BEING FIRST DULY SWORN, AFFIANT STATES AS FOLLOWS:

My name is   COREY CARNEY

I'VE KNOWN MELISSA DAVIS FOR 15 YEARS, I HAVE PURCHASED 50 ROCKS OF CRACK COCAINE FROM DAVIS AT LEAST 30 TIMES. IN THE PAST I HAVE SEEN MELISSA POSESS ABOUT ¼ OUNCES OF CRACK COCAINE FOR SALE. I HAVE HAD RECENT CONSERVATIONS WITH DAVIS SHE AGREED TO SELL ME CRACK COCAINE.

_____
SIGNATURE

SUBSCRIBED AND SWORN TO BEFORE ME THIS _5TH_ DAY OF _December_, 200_

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
DONALD R. KRULL
Notary Public, State of Illinois
My Commission Expires 08/22/05

70

1    knew that there was drugs being sold out of that house.

2        Q    Well, now, you testified here at this trial today that

3    you were planning to go buy the drugs from Kelvin Little,

4    right?

5        A    Uh-huh.

6        Q    You never told Deputy Krull on December the 10th that

7    you were going to go and buy cocaine from Kelvin Little, did

8    you?

9        A    Like I said, when we got there, we were going to buy

10    from someone else.  The lights were on at their house.  We

11    had stated that earlier what people we were going to buy

12    from, and his name did come up, not that night, though.

13    When I get to Sparta --

14        Q    You had been previously buying your cocaine from

15    Melissa Davis; wouldn't that be correct?

16        A    Yes, sir, I've purchased cocaine from Miss Melissa

17    Davis.

18        Q    You'd never indicated to Deputy Krull that you'd ever

19    purchased cocaine from Kelvin Little?

20        A    No, sir, I didn't.

21        Q    Are you employed by the Randolph County sheriff's

22    department?

23        A    No, sir.

24        Q    Are you a paid drug informant by any state or county

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
RANDOLPH COUNTY, ILLINOIS

**FILED**

JUL - 2 2002

*Barbara L. Brown*
CIRCUIT CLERK
RANDOLPH COUNTY, IL

THE PEOPLE OF THE STATE OF ILLINOIS )
)
)
)
)
vs                                   )       NO. 02-CF-74
)
KELVIN M. LITTLE.                    )
    Defendant,                       )

## SUPPLEMENTAL REQUEST TO PRODUCE

**NOW COMES THE DEFENDANT,** KELVIN M. LITTLE , by and

through his attorney James W. Kelley and for his Supplemental Request to Produce

herein requests:

1)    The names , addresses and criminal histories of any and all witnesses the state
      will call to testify at the trial.

2)    Any evidence, documents or proof of any kind of federal authority for the use
      of eavesdropping devices used in relation to this case including any
      applications or affidavits used to obtain the authority.

3)    Any audio or visual recordings obtained in the investigation of this case

LAW OFFICE OF JAMES W. KELLEY

BY: *James W. Kelley*

James W. Kelley, #06196401
314 West Third Street
Sparta, Illinois 62286
Telephone: 618-443-3091
Fax: 618-443-3093

Page 6

# RANDOLPH COUNTY SHERIFF'S OFFICE
# INVESTIGATIONS SECTION

## INVESTIGATIVE  REPORT

| CASE TITLE: | Melissa DAVIS / Kelvin LITTLE Search Warrant and Arrests. |
|---|---|

| DATE: | REPORTING INVESTIGATOR: | CASE #: |
|---|---|---|
| 04-03-2002-05-08-02 | Chief Deputy Donald R. Krull | 2002-IR-083 |

On April 3, 2002, I, Randolph County Sheriff's Office Chief Deputy Donald R. Krull completed an application for a search warrant for the person and property of Melissa DAVIS and Kelvin LITTLE located at 213 E. Page St., Sparta, Randolph County, Illinois.  I presented the search warrant application to the Honorable Circuit Judge Flynn on April 3, 2002 at 10:23 A.M.  Judge Flynn granted the search warrant.

On April 3, 2002, at 1:25 P.M., members of the Randolph County Sheriff's Office, Sparta Police Department and Tilden Police Department executed the search warrant.

The Following Police Officers participated:

Donald R. Krull, Randolph County Sheriff's Office Chief Deputy
Shannon Wolff, Randolph County Sheriff's Office Detective
Bobbie Jo  Hicks, Tilden Police Department Senior Officer
Alan Young, Sparta Police Department Chief
Daniel Hanna, Sparta Police Department Patrolman
Kenneth McHughes, Sparta Police Department Patrolman
Gary Steele, Sparta Police Department Patrolman
Keith Kiner, Sparta Police Department Patrolman
Greg Valleroy, Sparta Police Department Patrolman
Robert Williams, Sparta Police Department Patrolman

The search warrant was executed after uniformed Sparta Police Department Patrolman McHughes wer to the front door of 213 E. Page St., Sparta, Illinois and knocked.  Kelvin LITTLE opened the door and Office McHughes told LITTLE that he had a search warrant for LITTLE and the residence. Officer McHughes secure LITTLE in handcuffs. Other Police Officers announced loudly that they had a search warrant and entered th opened door. Det. Wolff entered first being followed by Officer Steele and Officer Hanna.  Melissa DAVIS wa found inside the residence and secured in handcuffs. A search of DAVIS, LITTLE, the residence and vehicles wa completed.  Officer Robert Williams transported DAVIS and LITTLE to the Sparta Police Department where the remained until they could be interviewed.

The following evidence was seized during the search warrant and at the Sheriff's Office.

*Chief Deputy Donald R. Krull*

**INVESTIGATOR'S SIGNATURE**

IN THE CIRCUIT COUR T OF THE TWENTIETH JUDICIAL CIRCUIT
RANDOLPH COUNTY, ILLINOIS

THE PEOPLE                            )
OF THE STATE OF ILLINOIS             )
        Plaintiff,               )
                                      )
vs.                                   )            NO.  02-CF-74
                                      )
KELVIN M. LITTLE,                     )            **FILED**
        Defendant.               )

JUL – 2 2002

*Barbara L Brown*
CIRCUIT CLERK
RANDOLPH COUNTY, IL

## MOTION TO SUPPRESS

**NOW COMES** Defendant, Kelvin M. Little, by and through his attorney, James W. Kelley, and for his Motion to Supress states as follows

### COUNT I

1) On or about April 5,2002 a search was conducted of a Lincoln automobile in the City of Sparta, Randolph County, Illinois.

2) As a result of said search the defendant, Kelvin Little was charged with unlawful possession of weapons by a felon.

3) Any evidence seized or obatined from the above search should be suppressed, barred and excluded as the automoblie did not belong to the defendant.

### COUNT II

1) On or about December 7, 2002 an alleged drug buy was overheard and observed on the basis of a warrant obtained by the Randolph County States Attorneys Office.

2)  Any evidence seized or obtained as a result should be suppressed, based and excluded as the search and overhear exceeded the scope of the warrant.

Law Office of James W. Kelley

BY: _____

James W. Kelley, #06196401
314 West Third Street
Sparta, IL 62286
Telephone: (618) 443-3091
Fax: (618) 443-3093

Attorney for Defendant

4

1    you're not disputing that he talked to you about it?

2        THE DEFENDANT: No.  No, Your Honor.

3        THE COURT: Are you saying that you're not in

4    agreement with what he's saying?

5        THE DEFENDANT: That's correct, Your Honor.  That's

6    correct because the motion I think was a valid motion.

7        MR. BROWN: I suppose it comes down to a matter of

8    defense strategy, and this motion in my preparation of this

9    defense could be totally inconsistent with our defense of

10   not guilty that we didn't possess these items.  They weren't

11   our property.

12       THE COURT: Mr. Little, while Mr. Brown was making

13   that statement, you were shaking your head yes.  I assume

14   that you agreed with what he just said; namely, that it will

15   be your position at trial that you did not possess the

16   things that the prosecutor is alleging that you possessed?

17       THE DEFENDANT: That's correct, Your Honor.

18       THE COURT: Okay.  In that respect then, show that the

19   motion of defense counsel to withdraw the previously filed

20   Motion to Suppress is granted the Court finding that as a

21   matter of trial strategy, it's defense counsel's prerogative

22   to determine what, if any, pretrial motions should be filed

23   or pursued.

24       I believe that this case is set for trial before a

## ARGUMENTS

1. TRIAL COUNSEL WAS INEFFECTIVE, for failing to Motion for Judgement of Acquital, after the State's case, and again after all the evidence was presented due to insufficient evidence to support a conviction.

2. TRIAL COUNSEL WAS INEFFECTIVE, for failing to pursue the original Motion to Suppress Evidence.
Trial Counsel for Defendant, Mr.James Kelly, filed a Motion to Suppress Evidence on July 2, 2002, but had to withdraw due to conflict of inter-est. Then I was appointed counsel by the court on July 11, 2002, Richard Brown, whom refused to hear the motion to suppress and move to have it dismissed, depriving me of my 4th Amendment right of the U.S Constitut-ion, and also my 5th Amendment right to Effective Assistance of Counsel.

3. TRIAL COUNSEL WAS INEFFECTIVE, because his performance fell below an objective standard of reasonableness, as required by the U.S Consti-tution, where counsel's failure to perform the aforesaid, due to the fact that no keys to the vehicle was found on my person, nor was I in the vehicle at the time of the search. I was not the lien-holder or the co-lien holder on the title of said vehicle, nor was there a doc-ument produced which would indicate I in fact, was the owner of the vehicle, and the vehicle was not on propery owned or rented by myself at the time of the search. I Suggest that had counsel motion for an Acquittal based on insufficiency of the evidence, the outcome more like-ely than not, may have been different. this renders trial counsel to be ineffective, in violation of my constitutional rights of the 4th Amendment of Illegal Search and Seizure, 14th Amendmentof deprivation of Due Process of the law, and the 6th Amendment, in which counsel knew that documents was present at trial that showed who the vehicle belong-ed to, but never presented this evidence at trial, violating my 6th Amendment Right of Effective Assistance of Trial Counsel. Pre-trial Discovery on file on June 6, 2002.

1    was in the car.

2    Q    All right.  Who is the automobile registered to?

3    A    I don't know at this time.

4    Q    What kind of automobile was it?

5    A    I'm thinking it was maybe a Lincoln.

6    Q    But you're not sure?

7    A    Can't say for sure right now, no.

8    Q    Was an effort ever undertaken to find out who the

9    automobile was registered to?

10    A    There was mail in the trunk with Mr. Little's name on

11    it right beside the ammunition.

12    Q    Are you telling me that that's proof of ownership?

13    A    I hadn't ran no 28 on the vehicle, no, sir.

14    Q    Okay.  So we don't know who the car is registered to;

15    is that right?

16    A    Not at this time.

17    Q    Okay.  But you got up there, and you just testified

18    that it was Mr. Little's automobile; is that correct?

19    A    To my knowledge, that's what I was told he was

20    driving.

21    Q    I see.  Who told you that?

22    A    Sparta police.

23    Q    Sparta police.  Do you know if Sparta police have run

24    a, what did you say, a 28 on the vehicle?

M/SP9 L/CV5 B65 02 12/ 18.00 20 LIC/KEVYK1

M/SP9

CHF 050702 1800

B65 NO REC LEADS. LIC/KEVYK1 LIS/IL

M/SP9

SOS 050702 1800

STA/VALID VAL/112801 TTL/T1344115024

KEVYK1 1002 ORIG PLT LIC STX/2K0572430
JOHNSON TRACIE A--MULT OWNER
JOHNSON KEVIN
209 S OAK SPARTA 62286
J525-8016-8917
1LNBP94F1BY668784 81 LINCOLN 4 DOOR
STATUS UNAVAILABLE

M/SP9

SOS 050702 1800

DL/IP STA/VALID
TDL/TIP STA/SEE ILOLNHELP
CDL/CIP STA/SEE ILOLNHELP
SCHLBUS STA/NOT A SCHOOL BUS DRIVER (SEE ILOLNHELP)

JOHNSON TRACIE ANN
PO BOX 18 436 E OSBORN APT 2 SPARTA 62286
SEX/F DOB/110768 HGT/5'05" WGT/210 HAI/BLK EYE/BRO
OLN/J525-8016-8917 OLC/D* OLT/ORIG EXP/11072003 ISS/12171999
RES-PID CLASS/NONE
NO STOPS IN EFFECT
NO CONV LAST 12 MO
DIGITAL ISSUE
END

M/SP9
CHF 050702 1800

B65 NO REC LEADS NAM/JOHNSON,TRACIE ANN SEX/F
DOB/110768 DLN/J52580168917 VIN/1LNBP94F1BY668784

M/SP9
1L01 NCIC RESPONSE
IL0790300

NO NCIC WANT OLN/J52580168917
NO NCIC WANT VIN/1LNBP94F1BY668784

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT OF ILLINOIS
RANDOLPH COUNTY

THE PEOPLE OF THE STATE OF ILLINOIS,  )
                                      )
                vs.                   )
                                      )        No. 2002-CF-160  74
KELVIN M. LITTLE,                     )
                                      )
                Defendant.            )

**FILED**

AUG 21 2002

*Barbara L Brown*
CIRCUIT CLERK
RANDOLPH COUNTY, IL

## ORDER

Now on the 21st day of August, 2002, this cause came on for hearing on Defendant's Motion To Dismiss the Motion To Suppress filed herein on July 2, 2002. IT IS HEREBY ordered that a defense counsel's request the Motion To Supress filed herein on July 2, 2002, is dismissed without prejudice.

Entered   8-21-02.

_____
Judge

```
2002CF000074D 001
PEOPLE                          WILLIAMSON, DARRELL G
VS.
LITTLE, KELVIN M                BROWN, RICHARD A
```
--------------------------------------------------------------------------

| ENTERED | JDG CR | TEXT | | CHANGED USER |
|---------|--------|------|--|--------------|

--------------------------------------------------------------------------

| ENTERED | JDG CR | TEXT | Amount | | CHANGED | USER |
|---------|--------|------|--------|--|---------|------|
| 4/04/2002 | | **Information filed on 04/04/2002. | | | | MMS |
| | | | $40.00 | Cl. | | MMS |
| | | | $25.00 | Cl. | | MMS |
| | | | $40.00 | Cl. | | MMS |
| | | | $40.00 | Cl. | | MMS |
| | | | $30.00 | S.A. | | MMS |
| | | | $10.00 | S.A. | | MMS |
| | | | $30.00 | S.A. | | MMS |
| | | | $30.00 | S.A. | | MMS |
| | | | $15.00 | B.F. | | MMS |
| | | | $ 5.00 | Auto | | MMS |
| | | | $ 5.00 | T.F. | | MMS |
| | | | $ 5.00 | D.S. | | MMS |
| | | | $10.00 | Cl. | | MMS |
| | | | $90.00 | Lab. | | MMS |
| | | Amended Information on file. | $10.00 | Med. C. | | MMS |
| 4/03/2002 | JDF | Search Warrant issued.  (In 02-CF-73) | | | 4/16/2002 | MMS |
| 4/05/2002 | JDF MU | Defendant appears.  State represented by Michael Burke, | | | 4/09/2002 | MMS |
| | | Assistant State's Attorney.  Continued to 4/15/02 @ | | | 4/09/2002 | MMS |
| | | 9:00 a.m. as to attorney. | | | 4/09/2002 | MMS |
| | | Bond set @ $150,000.00. | | | 4/09/2002 | MMS |
| | | Plea of not guilty entered.  SJ | | | 4/09/2002 | MMS |
| 4/09/2002 | | Notice on file. | | | | MMS |
| 4/10/2002 | DD | Search Warrant returned and Order in 02-CF-73. | | | 4/16/2002 | MMS |
| 4/15/2002 | JDF MU | Defendant appears with Att. James Kelley.  State represented | | | 4/16/2002 | MMS |
| | | by Darrell Williamson, State's Attorney.  Preliminary hearing | | | 4/16/2002 | MMS |
| | | set 5/6/02 @ 9:00 a.m. | | | 4/16/2002 | MMS |
| | | Plea of not guilty entered.  SJ | | | 4/16/2002 | MMS |
| 4/16/2002 | | Notice on file. | | | | MMS |
| 5/07/2002 | | Entry of Appearance on file. | | | | MMS |
| | JDF MU | Defendant appears with Att. James Kelley.  State represented | | | | MMS |
| | | by Michael Burke, Assistant State's Attorney.  "PROBABLE CAUSE" | | | | MMS |
| | | found. | | | | MMS |

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT OF ILLINOIS
RANDOLPH COUNTY

The People of the State of Illinois )
)
vs. )
) NO. 2002-CF-74
)
KELVIN M. LITTLE, defendant. )
) **FILED**
)
) SEP 2 3 2002

*Barbara L Brown*
CIRCUIT CLERK
RANDOLPH COUNTY, IL

MOTION FOR NEW TRIAL

Now comes the defendant by his attorney, Richard A. Brown,

and moves that the Court reverse the jury's verdict of guilty and

dismiss this above styled action against defendant, or in the

alternative, that the defendant be awarded a new trial, and in

support thereof states as follows:

1. Defendant was not proven guilty beyond a reasonable doubt.

2. The Court erred by questioning potential jurors for another civil

trial which defense counsel was representing a party at the same time that

jurors for the trial in this cause were being questioned resulting in counsel

not being able to give defendant individual loyalty to each client over the

objection of counsel.

WHEREFORE, defendant prays that the jury's verdict be set

aside or in the alternative, that he be given a new trial.

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument
was served upon the attorneys of record of all parties to the above
cause by enclosing the same in an envelope addressed to such
attorneys at their business address as disclosed by the pleadings
of record herein, with postage fully prepaid and by depositing
said envelope in a U.S. Post Office mail box in Chester, Illinois
on the ___23___ day of ____SEPT____ ___.

*Richard A. Brown*

Richard A. Brown, attorney for

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
RANDOLPH COUNTY, ILLINOIS

KELVIN LITTLE,        )
            Plaintiff,    )
                )
    vs.        )        No. 01-L-34
                )
BILLY JOE KEMPFER,    )
                )
            Defendant.    )

**ORDER**

Pursuant to defendant, Billy Joe Kempfer's, Motion to Dismiss for Want of

Prosecution, the lawsuit of Kelvin Little against Billy Joe Kempfer  is dismissed ~~with~~

~~prejudice~~.    *not*

DATED: _11-14-02_

_____
JUDGE

## CONCLUSION

The recording should'nt have been admitted into trial, due to the fact that the recording was inaudible for purposes of it's veracity, and that the over-hear was on Davis. In the over-hear documents, it does not indicate that Little made any comments about knowing how to manufacture or prepare powdered-cocaine into the form of crack-cocaine. It was in fact, Davis's name that is documented in asking do the c/s know how to cook. It is not no where mentioned of whom made the delivery. The tape was inconclusive, and the over-hear document was mostly inaudible and illegible, and was therefore, inadmissable for being unintelligable due to it's not being able to be precisely understood, where the events taken place therein, needed to be assisted with a transcript derived from the inaudible recording. The over-hear exceeded the scope of the warrant, in violation of Little's 4th, and 5th Amendment rights, and this act falls under the "Poisinous Tree" doctrine, of other evidence which was the product of illegal surveillance, which is also subject to suppression. Due to insufficient evidence and fruit from the poisinous tree, and since Law Enforcement Krull did'nt eyewitness the Delivery, he would have had to rely on the c/s word, who are known felons, and drug users with priors pending, as hear-say. More info on this issue is available "on record" at page No.#170.

1    A    There were no sounds on the tape.  That's correct.

2    Q    And you weren't there?

3    A    No.

4    Q    Correct?

5    A    No.

6    Q    So your basis of information is what Corey Carney told

7    you?

8    A    And the fact that there were no voices on the tape.

9    Q    Okay.  And that the same later on, that same page

10   four, it states, "Carney gets cocaine from Little," and my

11   question for you again is you have no personal knowledge as

12   to who Carney got the cocaine from?

13   A    Other than him telling me.

14   Q    Yeah.  Other than what Corey Carney told you happened,

15   you don't know?

16   A    Other -- other than that and the voices on the tape.

17   Q    Now, you talked to Melissa Davis about this cannabis,

18   did you not, that was found there on the couch in the

19   bedroom that you got the pictures of and you testified

20   about?

21   A    I'm sure I interviewed her about everything.

22   Q    Okay.  And do you recall her telling you that that

23   cannabis was hers?

24   A    I think I recall her telling me it was both of theirs.

STATE'S ATTORNEY'S AUTHORIZATION FOR A PETITION
AND ORDER APPROVING THE USE OF AN EAVESDROPPING DEVICE.

<u>Chief Deputy</u> **Donald R. Krull**, an agent of the Randolph County Sheriff's Office, having the responsibility for the investigation of felonies under Illinois law, is hereby authorized to make application to a Circuit Judge of Randolph County for an order authorizing or approving the use of an eavesdropping device to overhear (and record) a conversation occurring between _C/S RICO NIKE_, a consenting party, and _MELISSA DAVIS_ which is expected to occur between

_6:00_ (AM/**PM**) on _DECEMBER 7, 2001_ and

_6:00_ (AM/**PM**) on _DECEMBER 16, 2001_.

The contents of any conversation learned through the electronic surveillance shall only be released or divulged according to Chapter 720, Section 108A-2, Illinois Revised Statutes.

DATED: _DECEMBER 4_, 20_01_

BY: _David G. Williamson_
States Attorney of Randolph County

_Donald R. Krull_
WITNESS

1    THE COURT: I'll overrule the objection.

2    A   In this particular case, the overhear was obtained on

3    Melissa Davis, and Kelvin Little was in the residence, and

4    he solicited the confidential source into purchasing the

5    cocaine because they were both in the residence.  The actual

6    overhear was on Melissa Davis.

7    Q   I see.  Mr. Little's name did not appear in any type

8    of probable cause affidavits that you would have filled out

9    requesting the warrant; is that correct?

10   A   That's correct.

11   Q   Okay.  You said you recognized Mr. Little's voice on

12   the tape.  Where had you heard Mr. Little's voice before?

13   A   I listened to that tape, as I told you before, and

14   then I had interviewed him at the PD on the offenses.

15   Q   So you had before you heard Mr. -- or before you heard

16   this voice on tape, you hadn't heard Mr. Little's voice at

17   all; is that correct?

18   A   I've never spoken with Mr. Little, no.

19   Q   Okay.  And you hadn't heard his voice on a tape

20   before?

21   A   A purchase, that purchase.

22   Q   Okay.  My question was had you ever heard Mr. Little's

23   voice before that day?

24   A   Yes, I have.

9

1    Your Honor.

2            MR. KELLEY: Thank you, Your Honor.

3                    CROSS EXAMINATION

4    BY MR. KELLEY:

5    Q    Deputy Krull, you said that this controlled substance

6    purchase I think that you testified initially to occurred on

7    December 10th of last year; is that correct?

8    A    That's correct.

9    Q    I'm a little confused then.  Later on when Mr. Burke

10    was questioning you, he made reference to or eluded to other

11    controlled substance purchases that may have occurred that

12    you were involved with at the residence at 213 East Page?

13    A    Yes.

14    Q    Okay.  How many of those were there?

15    A    I'd have to look through the file to be exact.

16    Q    Well, off the top of your head, how many do you think

17    there were?

18    A    There were more than five.

19    Q    Okay.  How many other than the purchase that you

20    allege occurred on December 10, 2001 involved Kelvin Little?

21    A    Kelvin Little was present at some of them, but he

22    didn't actually do the deal.

23    Q    Okay.  So none of them; is that correct?

24    A    Correct.

STATE AUTHORIZED OVERHEAR
DECEMBER 10, 2002

OFFICER---- Today's date is December 10th, 2001, the time is now 7:25 p.m. This is a State Authorized Overhear occurring at Randolph County in Sparta. (Unintelligible) Randolph County Authorization number 2000MR107?

KRULL------ Yes.

OFFICER---- Thought it was 110. 107.. Ah for voice identification can you state your assigned name.

NIKE---------- Rico Nike.

OFFICER---- You aware your conversation is being taped recorded?

NIKE---------- Yes sir.

OFFICER---- Is that being done with your permission?

NIKE-------- Yes sir.

OFFICER---- (Unintelligible)..

CS One-------- Is Cory?

Unknown----- Who?

CS One-------- Cory.

Unknown----- Cory?

CS One-------- Yeah. Sorry I bothered ya, just got back in town I ain't (unintelligible).

DAVIS-------- You can go in.

CS One-------- Alright. I got cold out (Unintelligible).

LITTLE------- What's up man.

CS One-------- Want some dope. Just got off work, I'm tired. (Unintelligible).

LITTLE------- (Unintelligible) get your ass out.. out of the door way. (Unintelligible)

Unknown----- I need to get.. (Unintelligible) get that toy out of here.

Unknown----- Okay.

CS One-------- I (unintelligible) pulled up cause I know.. ah.. (Unintelligible) I ain't one pulled up (unintelligible).

LITTLE------- (Unintelligible).

DAVIS-------- (Unintelligible) get your ass (unintelligible).

CS One-------- How's that other daughter do'n?

DAVIS-------- She's do'n alright.

LITTLE------- (Unintelligible).

CS One-------- Saw here down there couple times but....

DAVIS-------- Yeah she was try'n to get down there.

DAVIS-------- (Unintelligible)....

LITTLE------- Hey man...

CS One-------- ....ah.. what's his name been ask'n about her.

DAVIS-------- (Unintelligible).

LITTLE------- Oh.. (unintelligible) check you . Cause I got to do this man because (Unintelligible).

CS One-------- Alright.

LITTLE------ Ain't nothin personal, but I'm do'n every...

CS One-------- That's cool.

LITTLE------- ...I don't give a shit.

CS One-------- That's cool.. that's cool.

LITTLE------- Most people don't like it man. You know what you can do. (Unintelligible).

STATE AUTHORIZED OVERHEAR
DECEMBER 10, 2002

CS One-------- You know I (Unintelligible) before man.  Ahem.. I ain't try'n come back
              again.  I got two hundred I want'a spend.  I ain't try'n to come back.
LITTLE------- Okay cool.
CS One-------- Cause I know.. before I use to run in and out and shit.
LITTLE------- I'll hit ya.. I want'a get you on (Unintelligible).
CS One-------- Alright.
DAVIS-------- We've had enough of it around here (Unintelligible).
CS One-------- It ain't me.
DAVIS-------- That's why we've been.. we check everybody come through that door.
CS One-------- (Unintelligible) (Unintelligible).  Na.. I got ah.. burnt at work.  They give
              my (Unintelligible) check back (unintelligible).  They paid a couple days
              off….
DAVIS-------- (Unintelligible) my brother in-law get a check when he got burned…
CS One-------- Yeah that (Unintelligible).  He got burnt to.  He.. he ain't got his check
              yet?
DAVIS-------- No.
CS One-------- They got mine quick.
DAVIS-------- (Unintelligible) he didn't get paid (unintelligible) ahem.. (Unintelligible)
              spot.
CS One-------- Right. Right he had that thing on his head.
DAVIS-------- Yeah.
Unknown----- Give me the..
              (Kids talking)
DAVIS-------- Look when (unintelligible) be quiet.
LITTLE------ (Unintelligible).
CS One-------- Hey.
DAVIS-------- (Unintelligible). You know how to cook?
CS One-------- Huh?
DAVIS-------- You know how to cook.
CS One-------- Not really.  Well I'll come get it, which (unintelligible).
LITTLE------- (Unintelligible).
DAVIS-------- (Unintelligible).
CS One-------- Yeah I could do it.
LITTLE------- I know you could.  (Unintelligible).
CS One-------- Ah-hem.
LITTLE------- It's come'n.. it's come'n just like (Unintelligible).
CS One-------- (Unintelligible).   (Unintelligible) cause I ain't come'n back, I'm go'n
              home.
LITTLE------- (Unintelligible).
CS One-------- (Unintelligible).
DAVIS-------- You still with the girl?
CS One-------- Na.. well we see each other now and then.  Ahem.. I could hook it up to
              where she would go down (unintelligible).
DAVIS-------- Cause I.. cause Seria she had.. Seria went out to the job one day.  But she
              wasn't there.
CS One-------- Yeah she work in Du Quoin now, she got a job over there.

Page 2

STATE AUTHORIZED OVERHEAR
DECEMBER 10, 2002

DAVIS-------- Oh okay.

CS One-------- Thanks.

DAVIS-------- Okay.

CS One-------- I'm tired. (Unintelligible). Might be John followed me. He might be try'n to follow me. He might be try'n follow me. You all can not have that. Wait until up the street man.. That white car right there is conspicuous I see 'em. I could of spotted 'em. Anyway.

KRULL------ Get it?

CS One-------- Yeah.

KRULL------ Alright hang on.

CS One-------- Thing is.. he say do I know how.. I mean she say do I know how to cook. It must be powder then.

KRULL------ Huh?

CS One-------- (Unintelligible) cocaine.

KRULL------ Lets get back.

CS One-------- Right.

KRULL------ Alright.

CS One-------- (Unintelligible) did you hear the thing (unintelligible).

KRULL------- Huh?

CS One-------- You didn't hear any of it?

KRULL------- No.

CS One-------- Oh my God!

KRULL------- What? What'd she say?

CS One-------- They checked me man.

KRULL------- Really?

CS One-------- Yes they checked me. They just (Unintelligible).. Oh man they checked me. But they checked the front of me. That's why I'm glad I said put it in the back.

KRULL------- Okay hang on.

CS One-------- (Unintelligible). (Unintelligible).

KRULL------- (Unintelligible) what?

CS One-------- They asked for a number.

Unknown----- Sit down.

CS One-------- Can I smoke a cigarette some where? God.. gets this recorder off.

KRULL------- Hang on. (Unintelligible) phone call.

OFFICER---- (Unintelligible).

KRULL------- Yeah. (Unintelligible) give me a second.

OFFICER---- Time is ah.. is he still on?

KRULL------- Yeah. (Unintelligible).

Page 3

1     Q   Okay.  Now, you provided your confidential source with

2   some cash; is that correct?

3     A   Yes.

4     Q   All right.  How much did you provide him with?

5     A   Two hundred.

6     Q   Two hundred dollars?

7     A   Uh-huh.

8     Q   And in what denominations did you provide that

9   confidential source with?

10     A   I'd have to refer to the report.

11     Q   Have you recovered any of that money?

12     A   No.

13     Q   Okay.  You recovered some substance that you field

14   tested positive for cocaine on December 10, 2001 -- excuse

15   me -- on April 3, 2002?

16     A   Yes.

17     Q   Okay.  And that was subsequently sent to the crime

18   lab?

19     A   Yes.

20     Q   Are the results back on that?

21     A   No.

22      MR. KELLEY: I don't have anything further.

23      MR. BURKE: Nothing else, Your Honor.

24      THE COURT: You may step down, sir.

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT

RANDOLPH COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS )
                                     )
                  vs.                )      NO.  2002-CF-74
                                     )
KELVIN LITTLE,                       )
                                     )      **FILED**
                  Defendant.         )
                                            JUN 0 5 2002

                                            *Barbara L Brown*
**ANSWER TO DEFENDANT'S MOTION FOR DISCOVERY**  CIRCUIT CLERK
                                            RANDOLPH COUNTY, IL

       Come now the People of the State of Illinois and for Answer to

the Motion for Discovery state:

       1.  The State may call as witnesses for the prosecution all

witnesses whose names are found in the attached reports.

       2.  No electronic surveillance was used in this matter.

       3.  Police reports applying to this case are attached hereto.

       4.  All physical evidence in this matter is available for

inspection through the State's Attorney's Office.

                                    *Darrell Williamson*
                                    DARRELL WILLIAMSON
                                    State's Attorney
                                    Randolph County, Illinois

129

FORM 172 Subpoena

Jyers Printing Company, Springfield, Illinois

IN THE NAME OF THE PEOPLE OF THE STATE OF ILLINOIS

**FILED**

IN THE CIRCUIT COURT OF THE ___TWENTIETH___ JUDICIAL CIRCUIT

___RANDOLPH___ COUNTY

**AUG 2 9 2002**

*Barbara L Brown*
CIRCUIT CLERK
RANDOLPH COUNTY, IL

THE PEOPLE OF THE STATE OF ILLINOIS

v.

Kelvin M. Little,

Defendant

NO. ___2002-CF-74___

**SUBPOENA**

To:    Corey Carney

YOU ARE COMMANDED to appear to testify before the Honorable ___Presiding Judge___

in room ___#2___ at ___the Randolph County Courthouse, Chester___, Illinois, on
(Insert name of building, address, including city)

___Monday, August 26___, 20___02___, at ___8:00 a___.m.
___for jury trial___

YOU ARE COMMANDED ALSO to bring the following:

in your possession or control.

YOUR FAILURE TO APPEAR IN RESPONSE TO THIS SUBPOENA WILL SUBJECT YOU TO

PUNISHMENT FOR CONTEMPT OF THIS COURT.

Witness, ___August 22___, 20___02___

*Barbara L. Brown*
Clerk of court

(Seal of court)

Name         Darrell Williamson
Attorney for State's Attorney
Address      Randolph County Courthouse
City         Chester, Illinois   62233
Telephone    618-826-5000  X  193

I served this subpoena by handing a copy to ...................................................................

........................................, 20.... I paid the witness $..................... for witness and mileage fees.

Returned unserved.  Corey Carney NOT FOUND in Randolph County.  Is in Perry County
Jail.  Dated:  08-28-02.

Signed and sworn to before me

Trial Counsel was Ineffective for failing to challenge the veras-
ity of the affidavit supporting probable cause. In the affidavit, it
alleges the c/s Rico Nikl has known Melissa Davis for 15 years and has
purchased crack from Davis 30 (thirty) times in the past and had con-
versations with Davis about her selling him crack-cocaine, on the 5th
day of December, 2001. Not once did the c/s mention that he ever pur-
chased crack-cocaine from Little, or that he was involved in selling
drugs at the residence. This leads to illegal search and illegal arr-
est under the friut of the "Poisinous Tree" doctrine. The affidavit did
not contain any information indicating Little, and was invalid on his
behalf; and therefore, any evidence gained from this, is invalid under
the fruit of the "Poisinous Tree" doctrine, in violation of my 4th. A-
mendment right to be free from illegal arrest, search, and siezure.
In support of this claim, see: People v. Moore, 240 Ill.Dec 257, 716
N.E.2d 851 (Ill.App.5 Dist.1999), and was insufficient for the arrest.
It does'nt mention anywhere in the affidavit or any other document,
how the c/s is known to be credible, or whether he has done any work
in the past for law enforcement. The affidavit filed in support of
the complaint for the search warrant was invalid for Little's arrest.

## MULTIPLE CONFESSIONS

In trial c/s Corey Carney stated that he purchased $200 worth of
crack-cocaine from Little. In one of the buys on December 8, 2001, in
a affidavit, he stated that Liitle and Davis completed the drug sale.
Davis's testimony on the stand, was that Little sold the drugs to c/s
Corey Carney, and on July 9, 2002, stated that she don't know if it
was her or Little who actually sold the drugs to the c/s, from an in-
terview by deputy Krull, tape recorded at Randolph County Sheriff's
Office. On April 3, 2002, that interview never stated anything about
a drug sale. Coerced confessions, 4th Amendment, and Due process Clause.

1    Q    Well, what did he tell you that he had talked to them

2    about?

3    A    Well, he can see what he can do.

4    Q    And what that meant was what he could see he could do

5    would be less than your punishment?

6    A    He didn't say them exact words, no, sir.

7    Q    Well, what words did he use?

8    A    He just said he could see what he can do.

9    Q    It was after he told you that he would see what he can

10   do that you started talking to him about selling drugs and

11   Kelvin Little; isn't that right?

12   A    Right, because they was the truth.

13   Q    Now, when you drove to St. Louis, I recall and you

14   testified here today that you were going to buy this cocaine

15   from one of your sources; is that right?

16   A    Yes, sir.

17   Q    It was you that had the source in St. Louis where you

18   went to?

19   A    Yes, sir.

20   Q    It was you that asked the source to buy the drugs?

21   A    Yes, sir.

22   Q    It was you that Corey Carney asked for when he came to

23   your house that day about purchasing drugs?

24   A    Yes, sir.

INTERVIEW WITH
MELISSA DAVIS
JULY 9, 2002

DAVIS---- Okay. He.. the source came over to my house. And he asked me.. he asked me did I have some. I told him yeah. And.. Cal came in from the back bedroom. And.. he s.. he said he was s.. he asked to search him. He search him. And (unintelligible) make it short, he didn't have no wire on 'em or nothin. Then Cal's like.. okay cool. So then I don't know if it was me or Cal. Which actually sold it to him.

KRULL--- Okay. But you do remember him search'n?

DAVIS---- Yes.

KRULL--- Had.. Carney been there prior to that?

DAVIS---- No not in awhile.

KRULL--- Okay. Ahem.. Regarding that purchase that night ahem.. Did that all.. happened often between you and Calvin? Were you search'n people for awhile there?

DAVIS---- Yes.

KRULL--- Okay. Ahem.. Was you sell'n crack or powder cocaine?

DAVIS---- Crack.

KRULL--- Okay. Did you sell powder cocaine at any time?

DAVIS---- Yes.

KRULL--- Okay. Would Calvin sell crack cocaine to?

DAVIS---- Yes.

KRULL--- Okay. W... describe you two's relationship when it came to traffic'n and drugs how did that work?

DAVIS---- It worked pretty good sometimes. Sometimes we was always into it. Far as.. me.. him think'n I'm just do'n it and.. And ain't be'n careful and this and that (unintelligible) stuff like that.

KRULL--- Okay. Who would actually drive to get the.. the crack cocaine reup. Who would actually do that?

DAVIS---- Me.

KRULL--- Okay. Did he ever go with ya?

DAVIS---- Yes.

KRULL--- Okay. So he would drive with ya?

DAVIS---- Yeah.

KRULL--- Ah.. where would you usually go?

DAVIS---- St. Louis.

KRULL--- Okay. Is it East St. Louis or St. Louis?

DAVIS---- St. Louis.

KRULL--- Okay. Ahem.. Who would turn deal in St. Louis?

DAVIS---- Me.

KRULL--- Okay. Was there any times.. that you two would go to St. Louis and get the crack cocaine ahem.. did.. did Calvin ever have a gun?

DAVIS---- No.

KRULL--- Okay. Had you ever seen Calvin with a gun?

DAVIS---- Yes.

KRULL--- Describe it for me.

DAVIS---- A little black gun. A little small black gun.



# OFFICE OF THE STATE APPELLATE DEFENDER
## FIFTH JUDICIAL DISTRICT

730 E. ILLINOIS HIGHWAY 15, SUITE #1
MT. VERNON, ILLINOIS 62864
TELEPHONE: (618) 244-3466
FAX: (618) 244-9207
e-mail: daniel.kirwan@osad.state.il.us

January 14, 2004

**DANIEL M. KIRWAN**
DEPUTY DEFENDER

---------------

E. JOYCE RANDOLPH
DAN W. EVERS
LARRY R. WELLS
RITA K. PETERSON
MICHELLE A. ZALISKO
EDWIN J. ANDERSON
LAWRENCE J. O'NEILL
JOHN H. GLEASON
PAIGE CLARK STRAWN
ELAINE M. BELCHER
ASSISTANT DEFENDERS

Mr. Kelvin M. Little
Register No. N62392
Menard Correctional Center
P.O. Box 711
Menard, IL 62259

Re:  *People v. Kelvin Little*
      App. Ct. No. *5-02-0739*

Dear Mr. Little:

This letter addresses the points you raised in your letter dated December 10, 2003, concerning various issues that could be raised before the Appellate Court. Let me discuss all of your points, in the order in which you raised them. In this letter, I will occasionally refer to "the written record" or "the record" of your case. Remember that the Appellate Court will examine only the record that was compiled in the circuit court. The Appellate Court does not examine anything outside the record (except for court documents, and perhaps some other documents in rare cases). The Appellate Court does not consider any evidence that was not presented in the circuit court. Therefore, when I address the Appellate Court in writing or in person, I must confine my remarks to the contents of the record and any legal issues arising from those contents.

In your letter, you first mention that you would like to "attack the search warrant," and you suggest that the affidavit supporting the complaint for search warrant is faulty. Accompanying this letter are photocopies of (i) the complaint for the search warrant; (ii) Deputy Krull's affidavit supporting the complaint for search warrant; and (iii) the search warrant. These kinds of documents can be attacked in different ways. Usually, a defendant will argue either (a) that the affidavit was insufficient to establish probable cause to believe that evidence of a crime would be found in the place, or on the person, to be

Mr. Kelvin M. Little
January 14, 2004
Page Two

searched; or (b) that the supporting affidavit contained deliberately false statements, and without those statements, probable cause to search did not exist. In all cases, information from a confidential source may supply the necessary probable cause. In your case, Krull swore in his affidavit that a few confidential sources told him that they had purchased cocaine from Melissa Davis at 213 East Page Street in Sparta. Many of these transactions were secretly recorded by police, Krull wrote. Confidential source #4 told Krull that on one such occasion, "KELVIN LITTLE and DAVIS completed the drug sale." Having examined all of the relevant documents contained in the record, I have concluded that the warrant application supports a finding of probable cause to search the house at 213 East Page Street, and the person and property of yourself and Melissa Davis. Furthermore, nothing in the record establishes, or even indicates, that any deliberate falsehoods were included in the documents. Just in case you would like to read more about search warrants and affidavits, I have enclosed a copy of the decision in a case called *People v. Cooke*, which I selected at random.

Second, you mention that the police did not find any drugs on your person. It appears that you want to argue that the State failed to prove, beyond a reasonable doubt, that you possessed cocaine. Remember that a defendant can be convicted of possessing contraband even if the contraband is not found on his person. If the contraband is found in a place controlled by the defendant, he can be convicted of possessing it. In your letter, you did not mention three important pieces of evidence at trial: (i) Melissa Davis's testimony that you lived with her at the house, and that the two of you together sold cocaine; (ii) Officer Daniel Hanna's testimony that on March 8, 2002, he stopped you for a traffic violation, and you said your address was 213 East Page Street in Sparta; and (iii) Corey Carney's testimony that you and Davis together sold him cocaine. This evidence was enough to support verdicts of guilty on the two cocaine charges. You might say, "But those witnesses were lying!" My response is simple. You are not the one who decides whether a witness lied. Furthermore, I am not the one who decides whether a witness lied. The judges of the Appellate Court are not the ones who decide whether a witness lied. In our system of justice, it is the jury that decides whether a witness was lying or telling the truth. The Appellate Court does not "second guess" the jury on such matters. Apparently, the jury believed the State's witnesses. The Appellate Court will accept the jury's

Mr. Kelvin M. Little
January 14, 2004
Page Three

determination. The pieces of mail, etc., merely add to the evidence that you lived in the house.

Third, you assert that your attorney provided ineffective assistance when he failed to seek the suppression of evidence. As you note, your first attorney filed a motion to suppress, and your second attorney withdrew it. A copy of the motion is enclosed. Having read the entire record of your case, I cannot imagine how this motion would have been successful. In Count I of the suppression motion, the attorney alleges that "the automobile did not belong to the defendant." However, the testimonies of Melissa Davis, Daniel Hanna, and Kevin Johnson all indicated that you had possession of the car on the day the police found the bullets. There was no evidence that somebody else possessed the car on that day. In your letter, you write that the car was not yours, and suggest that Kevin Johnson had possession on the relevant day. Nothing is gained by making that statement to me in a letter. You needed to tell it to the jury, or you needed to present some other evidence that you did not possess the car. The jury might have believed your evidence, or it might not have believed your evidence. The point is, it's the jury's job to decide such questions. Also, the jury may have wondered why Kevin Johnson would have parked his car at 213 East Page Street. In Count II of the suppression motion, your attorney alleges that the search exceeded the scope of the search warrant. The warrant authorizes a search of the house, of your person, of Davis's person, and of vehicles, etc., at the house. Nothing in the record indicates that the police searched any place, or any person, or any thing beyond the places, people and items mentioned in the warrant.

Fourth, you seem to say that the State failed to prove, beyond a reasonable doubt, that you were the one who possessed the bullets. The testimonies of Davis, Johnson, and the police officer who found the bullets in the car's trunk were sufficient to support a verdict of guilty on the weapon charge. The jury was free to believe these witnesses. Nobody testified contrary to these witnesses. The record does not include any evidence that someone other than yourself had possession of the car on the day of the search.

Fifth and finally, you write that the trial judge's method of selecting a jury deprived you of the due process of law. However, you do not explain how. The judge's method was unusual, but I do not see how it harmed you in any way. A defendant has

4.Trial Counsel Was Ineffective,because his performamce fell
  below the objective standard of reasonableness,as required
  by the U.S.Constitution,where Counsel's failure to perform
the forsaid,Violation of 4th Amendment Rights,Search & Seizure

The Search Warrant was for Narcotics,of that nature.
Law Enforcement exceeded the scope of the search warrant and
the physical bounds of the area as to which consent was granted
such as by looking through private papers and documents,namely
Attorney's correspondence and cell phone billing outdated.

Even though the warrant was granted for Narcotics. Wherefore
this evidence is subjected to suppression as it is also fruit
of a Poisonous free.
Counsel was ineffective for motioning the Court to dismiss my
original motion to suppress,and subjected me to the outcome of
this case,in violation of my 4th amendment right to effective
assistance of counsel.